# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, <br><br> Plaintiff, <br><br> v. <br><br> LOCAL 689, AMALGAMATED TRANSIT UNION, <br><br> Defendant. | Civil Case No. 18-1370 (RMC) |

## MEMORANDUM OPINION

Washington Metropolitan Area Transit Authority (WMATA) seeks a temporary restraining order and preliminary injunction against the arbitration of four grievances, initiated by Local 689, Amalgamated Transit Union (Local 689 or the Union). The Union's angst is caused by policies under which WMATA checks the criminal histories of applicants and, on occasion, employees. WMATA notes that this Court has already entered a permanent injunction with respect to the first two grievances, and that the third is covered by an agreement between the parties to postpone any arbitration pending final resolution of the lawsuit, *Little v. Washington Metropolitan Area Transit Authority*, Civil Case No. 14-1289 (D.D.C.), which is now on appeal. WMATA contends that the fourth grievance is not subject to arbitration because no WMATA employee has been adversely affected by the policy under attack. The Court will grant the motion in part and deny it in part for the reasons set forth below.

1

# I. FACTS

## A. WMATA's Background Check Policies

In 2012, WMATA adopted WMATA Policy 7.2.3 (2012 Policy), which set forth the criminal background screening policy and procedure to be followed by WMATA and its contractors when screening candidates or employees. Compl. [Dkt. 1] ¶ 26. Effective July 10, 2017, WMATA adopted a new criminal background check policy (2017 Policy) and the 2012 Policy was discontinued. *Id.* ¶¶ 26-27. Certain aspects of the 2017 Policy that affect current employees were announced in 2017 but are not scheduled to go into effect until July 1, 2018.

## B. The WMATA Compact

WMATA was created by an interstate Compact approved by Congress and codified at D.C. Code § 9-1107.01; Md. Code, Transportation § 10-204; and Va. Code § 33.2-3100. Compl. ¶ 6. Local 689 largely represents operators, mechanics, maintenance personnel, and clerical personnel employed by WMATA. *Id.* ¶ 7. Section 66(b) of the Compact provides that WMATA "shall deal with and enter into written contracts with employees as defined in section 152 of title 29, United States Code, through accredited representatives of such employees or representatives of any labor organization authorized to act for such employees concerning wages, salaries, hours, working conditions, and pension or retirement provisions." D.C. Code § 9-1107.01. Under Section 152, the definitional section of the National Labor Relations Act:

> the term "employee" shall include any employee, and shall not be limited to the employees of a particular employer, unless this subchapter explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment, but shall not include any individual employed as an agricultural laborer, or in the domestic service of any family or person at his home, or any individual employed by his parent or spouse, or any individual having the status of an independent contractor, or any individual employed as a supervisor, or any individual employed by an employer subject to the Railway

Labor Act, as amended from time to time, or by any other person who
is not an employer as herein defined.

29 U.S.C. § 152(3).

Section 66(c) of the Compact provides for arbitration of labor disputes between WMATA and its employees:

> *In case of any labor dispute involving the Authority and such employees where collective bargaining does not result in agreement, the Authority shall submit such dispute to arbitration* by a board composed of three persons, one appointed by the Authority, one appointed by the labor organization representing the employees, and a third member to be agreed upon by the labor organization and the Authority . . . . The determination of the majority of the board of arbitration, thus established shall be final and binding on all matters in dispute. . . . The term "labor dispute" shall be broadly construed and shall include any controversy concerning wages, salaries, hours, working conditions, or benefits . . . , and including any controversy concerning any differences or questions that may arise between the parties including but not limited to the making or maintaining of collective bargaining agreements, the terms to be included in such agreements, and the interpretation or application of such collective bargaining agreements and any grievance that may arise and questions concerning representation.

D.C. Code § 1107.01(66)(c) (emphasis added). Arbitration is, therefore, a statutory requirement and not the result of bargaining by these parties.

### C. The Collective Bargaining Agreement

Pursuant to the Compact, WMATA and Local 689 entered into a Collective Bargaining Agreement (CBA), the most recent of which was effective from July 1, 2012 to June 30, 2016.[1] Attach. 8, Local 689 Opp'n to Mot. for TRO and PI, Selected Sections of CBA (CBA) [Dkt.

---

[1] The parties explained at oral argument that bargaining for a new collective bargaining agreement reached impasse and is in the process of interest arbitration, whereby a panel of three arbitrators (one from each party and a neutral) will set the terms for the new contract. As a result, the terms of the 2012-2016 CBA continue in effect. The Union chose not to bargain about the 2017 Policy during the collective bargaining for a new contract. It hopes to bargain a side agreement.

9-8] at 2.[2]  In Section 102(a) of the CBA, WMATA recognizes Local 689 as the exclusive bargaining representative for a broad range of employees.  *Id.* at 3.  In Section 102(b), both parties recognize that their "legal rights, obligations and responsibilities . . . with regard to collective bargaining and resort to binding interest arbitration are specified in the WMATA Compact."  *Id.*  Also in Section 102(b), the Union "reserves the right to bargain and where necessary to seek interest arbitration concerning all issues relating to wages, hours and working conditions" but explicitly "acknowledges that all matters pertaining to the management of operations, including . . . the hiring and establishment of standards for selection and qualification of employees . . . , and the development and enforcement of reasonable rules and regulations regarding employment are the prerogatives of the Authority . . . ."  *Id.* at 3-4.  Section 104(c) also acknowledges that the Union may initiate Question Grievances for "Questions arising under the Agreement," *id*. at 7; and Section 105 describes the process for arbitrating "Questions and Grievances."  *Id*. at 9.

### D.  Local 689's Grievances

Local 689 seeks to arbitrate four grievances, falling into three categories.  First, the two 2014 Grievances, which claim that the 2012 Policy had a disparate impact on African Americans.  This Court entered a permanent injunction against arbitration of both 2014 Grievances in 2015, which was affirmed on appeal.  *See WMATA v. Local 689, Amalgamated Transit Union*, 113 F. Supp. 3d 121 (D.D.C. 2015), *aff'd* 638 Fed. App'x. 3 (D.C. Cir. 2016).  Second, Local 689 moves to reopen a 2016 Grievance about the same allegedly discriminatory effect of the 2012 Policy.  In 2016, this Court began to hear argument on the 2016 Grievance, but the parties entered into a written agreement to postpone consideration of that grievance until the *Little v. WMATA* litigation concluded.  *See* Ex. 5, Compl., 2016 Agreement [Dkt. 1-5] at 2-3.  This Court's approval

---

[2] Citations within this document are to the ECF page number.

of the class action settlement agreement in *Little v. WMATA* is currently on appeal at the D.C. Circuit. *See Little v. WMATA*, Civil Case No. 14-1289, Dkt. 255, Notice of Appeal. Therefore, the *Little v. WMATA* litigation has not concluded and the parties' agreement to postpone the 2016 Grievance is still in effect.

Finally, Local 689 brings a Question Grievance concerning the 2017 Policy. It initially argued that WMATA was required to negotiate with the Union before adopting the 2017 Policy but then conceded that WMATA is bound by the Court's order on the Settlement in *Little v. WMATA* to keep that policy in effect for a year. After discussion of the Order implementing the *Little v. WMATA* Settlement Agreement, the Union changed its argument to demand that WMATA engage in effects bargaining over the 2017 Policy, *i.e.*, bargaining as to how the 2017 Policy might affect current members of the bargaining unit represented by the Union. As modified, the 2017 Grievance is the only grievance the Union now seeks to arbitrate.

### E. This Lawsuit

On June 8, 2018, WMATA filed a Complaint against Local 689, alleging that the claims asserted in the grievances were not arbitrable and arguing that the arbitrations of three of the four Grievances were either precluded by this Court's prior permanent injunction or the 2016 agreement of the parties. *See* Compl. WMATA seeks to enjoin the imminent arbitrations and any future arbitrations in which employee grievants seek to make disparate impact claims based on WMATA's criminal background screening policies and procedures; WMATA also seeks a declaratory judgment that the claims asserted by Local 689 in the grievances are not arbitrable. *Id.* at 41-42. Shortly after filing its Complaint, WMATA filed a Motion for a Temporary Restraining Order and Preliminary Injunction on June 13, 2018. WMATA's Mot. for TRO and PI (Mot.) [Dkt. 5]; *see also* Mem. in Supp. of WMATA's Mot. for TRO and PI (Mem.) [Dkt. 5-1]. Local 689

opposed the motion on June 14, 2018, Local 689 Opp'n to Pl.'s Emergency Mot. for TRO and PI (Opp'n) [Dkt. 9], and the Court heard argument and discussion on June 18, 2018.

As described above, the arguments and discussion at the June 18 hearing clarified that the Union seeks to arbitrate the question of whether WMATA violated the Agreement by refusing to bargain with the Union over the effects of the 2017 Policy on bargaining unit employees and, if so, what the remedy would be.

## II. LEGAL STANDARDS

### A. Jurisdiction

The Compact confers jurisdiction upon this Court. Section 9-1107.01 of the D.C. Code states that "[t]he United States District Courts shall have original jurisdiction . . . of all actions brought by or against [WMATA]." D.C. Code § 9-1107.01(81); *see also Barksdale v. WMATA*, 512 F.3d 712, 714 (D.C. Cir. 2008) (quoting D.C. Code).

### B. Temporary Restraining Order

To demonstrate entitlement to a temporary restraining order or preliminary injunction, a litigant must show: (1) a substantial likelihood of success on the merits; (2) that it would suffer irreparable injury if the injunction were not granted; (3) that the balance of equities tips in its favor; and (4) that the public interest would be furthered by an injunction. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). "[T]he movant has the burden to show that all four factors . . . weigh in favor of the injunction." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009); *see also Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011) ("[W]e read *Winter* at least to suggest if not to hold that a likelihood of success is an independent, free-standing requirement for a preliminary injunction.") (internal quotations omitted). A preliminary injunction is "an extraordinary remedy that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004).

6

# III. ANALYSIS

## A. Likelihood of Success on the Merits

The crux of the parties' dispute here is whether the Question Grievance that asks whether WMATA was required to negotiate with the Union over the effects of the 2017 Policy is arbitrable. The Compact directs arbitration of labor disputes "involving the Authority and [its] employees." D.C. Code § 1107.01(66)(c). WMATA and the Union have separately entered into a CBA, which lays out the relationship between the parties. Section 102(b) of the CBA states that the Union "reserves the right to bargain and where necessary to seek interest arbitration concerning all issues relating to wages, hours and *working conditions*." CBA at 3-4. It also describes WMATA's exclusive prerogative to determine "all matters pertaining to the management of operations, including . . . the hiring and establishment of standards for selection and qualification of employees . . . , and the development and enforcement of reasonable rules and regulations regarding employment . . . ." *Id.* Finally, Section 104(c) acknowledges that the Union may initiate Question Grievances for "[q]uestions arising under the Agreement." *Id.* at 7.

The Union argues that the only remaining Grievance is a permissible Question Grievance which seeks to determine: (i) if WMATA was required to negotiate with the Union about the effects of the 2017 Policy because it is a "working condition" or (ii) if the Policy is a management prerogative to determine "standards for selection and qualification of employees." The Union relies in part on a January 2017 decision of a Board of Arbitration in the Paper Suspension Policy Question Grievance, which held that disciplinary policies affect working conditions and, therefore, should have been negotiated under the Compact and CBA between WMATA and Local 689. *See* Ex. 9, Opp'n, Opinion and Award in Paper Suspension Policy Grievance [Dkt. 9-9] at 23-25. WMATA argues that it cannot be compelled to arbitrate because no employee has been harmed and because the 2017 Policy is clearly management prerogative, which

7

is not negotiable. WMATA cites this Court's earlier decision concerning these parties and issues, in which the Court interpreted the Compact to require, in those circumstances, that the Union name an employee grievant affected by the policy under attack. *WMATA v. Local 689*, 113 F. Supp. 3d at 127.

The current circumstances are materially different. The Union asks the Board of Arbitration to determine if WMATA must engage in effects bargaining; in that posture, the Union is raising a matter concerning the scope of its own right to bargain, for which a specific affected employee is not necessary. The question must be answered within the confines of the collectively-bargained contract language setting forth management rights and union rights; it is not a question to be determined by reference to the Compact. A Board of Arbitration is the entity to interpret contract language.

For these reasons, the Court finds that WMATA has not met its burden of establishing a likelihood of success on the merits to justify a temporary restraining order or preliminary injunction in this matter.

## B. Irreparable Harm

WMATA argues that it will suffer "per se" irreparable harm if it must arbitrate a dispute that it has not agreed to submit to arbitration. *See Mount Ararat Cemetery v. Cemetery Workers and Greens Attendants Union, Local 365*, 975 F. Supp. 445, 446-47 (E.D.N.Y. 1997) (finding that party "may be presumed to suffer irreparable harm if forced to arbitrate a dispute it did not intend to be subject to arbitration after its contract expired"). However, as described above, the Union's Question Grievance concerns the scope of the parties' rights under the CBA, which is the bread and butter of labor arbitration to which WMATA has agreed.

WMATA also argues that if it is required to negotiate concerning implementation of the 2017 Policy, it will upset the Settlement in *Little v. WMATA*, which requires WMATA not to

8

alter the 2017 Policy for one year after the Settlement's approval, all of which is reflected in a formal Court Order. The Court addressed this issue during the motion hearing and noted that the Arbitrator could fashion a remedy, if s/he decided in favor of the Union, that would not disrupt the Settlement's first year.

For these reasons, the Court finds that WMATA has not demonstrated irreparable harm.

### C. Balance of Equities

In evaluating whether a preliminary injunction should issue, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citation and quotation marks omitted). Here, the balance of equities weighs in favor of Local 689 because it raised a Question Grievance subject to arbitration under the CBA, which can be resolved without injury to WMATA's adherence to the Settlement.

Accordingly, this factor weighs in favor of denying the motion for a temporary restraining order and preliminary injunction.

### D. Public Interest

WMATA argues that "[l]eaving the subject matter of the grievances to arbitration harms the public interest" because "[t]hese policies and practices are too important . . . to be left to decision in a forum where there are no defined rights, no protections, no governing law, and an exceedingly limited right of review by the courts." Mem. at 30-31. Under the circumstances now pertaining, in which the Union acknowledges the binding nature of the Court's Order on the Settlement and seeks only to negotiate the effects of the 2017 Policy on bargaining unit employees, these generalized objections do not persuade. On balance, the Court finds that the public interest favors labor arbitration and disfavors an injunction.

9

## IV. CONCLUSION

As explained above, the Court will grant in part and deny in part WMATA's motion for a temporary restraining order and preliminary injunction [Dkt. 5]. The Court will grant WMATA's motion as it pertains to the 2014 and 2016 Grievances and deny WMATA's motion as it pertains to the 2017 Question Grievance on the effects of the 2017 Policy. A memorializing Order accompanies this Memorandum Opinion.


Date: June 20, 2018                                /s/
                                                   ROSEMARY M. COLLYER
                                                   United States District Judge