UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 18-1370 (RMC) |
| v. | ) ) | |
| LOCAL 689, AMALGAMATED TRANSIT UNION, | ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION**

Following an earlier opinion in this matter that granted, in part, a temporary restraining order and preliminary injunction sought by Washington Metropolitan Area Transit Authority to forestall the arbitration of four grievances filed by Local 689, Amalgamated Transit Union, *see Washington Metro. Area Transit Auth. v. Local 689, Amalgamated Transit Union*, 313 F. Supp. 3d 207, 208-11 (D.D.C. 2018), the Union moved to dismiss the case as moot. WMATA opposes dismissal and argues that the case is not moot because it seeks a permanent injunction to prevent future arbitration demands concerning the same issues. The Court will grant in part and deny in part the motion to dismiss.

**I. FACTS**

This case has some history.[1] Represented by the NAACP Legal Defense and Educational Fund, Arnold & Porter LLP, and the Washington Lawyers' Committee for Civil Rights, a class of WMATA applicants and employees brought a lawsuit in 2014 to challenge a criminal

---

[1] The Memorandum Opinion on the temporary restraining order and preliminary injunction provides a fulsome description of the facts, which are known to the parties and therefore will only be briefly summarized here.

1

background check policy adopted by WMATA in 2012 (2012 Policy). *See Little v. Washington Metro. Area Transit Auth.*, Civil Action No. 14-1289 (D.D.C.). The 2012 Policy required all candidates for employment with WMATA to pass a criminal background check, which the *Little* plaintiffs alleged had a disparate impact on African-American applicants.

Then, in 2015, Local 689 jumped in and sought to arbitrate two 2014 grievances concerning the 2012 Policy on the same theory as the *Little* case, *i.e.*, that the 2012 Policy had a disparate impact on African Americans. In July 2015, this Court permanently enjoined arbitration of both 2014 Grievances; its opinion was affirmed on appeal. *See Washington Metro. Area Transit Auth. v. Local 689, Amalgamated Transit Union*, 113 F. Supp. 3d 121 (D.D.C. 2015), *aff'd* 638 Fed. App'x 3 (D.C. Cir. 2016). Local 689 then attempted to open a 2016 Grievance about the same allegedly discriminatory effect of the 2012 Policy and WMATA again sought an injunction. When, in 2016, the parties appeared for oral argument on the arbitrability of the 2016 Grievance, they instead entered into a written agreement to postpone consideration of that grievance until the *Little* litigation concluded. *See* Ex. 5, Compl., 2016 Agreement [Dkt. 1-5] at 2-3. Since then, the *Little* case settled and an appeal of this Court's approval of the class action settlement agreement has been dismissed by the D.C. Circuit. *See Little v. Washington Metro. Area Transit Auth.*, Case No. 18-7071, Per Curium Order (D.C. Cir. Sept. 11, 2018). The mandate in *Little* issued on October 23, 2018. *See Little v. Washington Metro. Area Transit Auth.*, Civil Action No. 14-1289, Mandate [Dkt. 260] (D.D.C.).

In the meantime, in conjunction with the *Little* Settlement, WMATA adopted a new policy on criminal background checks in 2017 (2017 Policy) that affords an applicant a second—individual—review of his or her criminal history and whether it should be disqualifying for a position with WMATA. The Union brought a Question Grievance concerning the 2017 Policy and WMATA responded with this lawsuit, filed on June 8, 2018. Appearing before the Court, Local

2

689 initially argued that WMATA was required to negotiate with the Union before adopting the 2017 Policy; it then conceded that WMATA is bound by the Court's order approving the *Little* Settlement to keep the 2017 Policy in effect for at least a year. The Union changed its position at the hearing and demanded that WMATA engage in effects-bargaining over the 2017 Policy, *i.e.*, bargaining as to how the 2017 Policy might affect current employees in the bargaining unit represented by the Union. As modified, the 2017 Grievance was the only grievance the Union sought to arbitrate at that time. The Court granted WMATA's motion to bar arbitration of the 2014 Grievances under *res judicata*, granted WMATA's motion to bar arbitration of the 2016 Grievance because *Little* had not concluded, and denied WMATA's motion for a preliminary injunction as to the 2017 Grievance in its modified form. *See Washington Metro. Area Transit Auth. v. Local 689*, 313 F. Supp. 3d at 213. In their briefs, the parties indicate that arbitration on the modified 2017 Grievance was scheduled for August 6, 2018.

The original June 2018 Complaint in this matter sought to enjoin the August 2018 arbitration concerning the 2017 Policy and any future arbitrations in which employee grievants seek to make disparate impact claims based on WMATA's 2012 or 2017 Policies on criminal background checks and procedures. WMATA also sought a declaratory judgment that the claims asserted by Local 689 in the 2016 and 2017 Grievances are not arbitrable. Compl. [Dkt. 1] at 41-42. Local 689 moves to dismiss the Complaint for mootness and WMATA opposes. *See* Defs.' Mot. to Dismiss (Mot.) [Dkt. 13]; Local 689's Mem. in Supp. of Mot. to Dismiss (Mem.) [Dkt. 13-1]; Opp'n of Pl. WMATA to Def.'s Rule 12(b)(6) Mot. to Dismiss Compl. (Opp'n) [Dkt. 16].[2]

---

[2] The Washington Metropolitan Area Transit Authority Compact confers jurisdiction upon the federal district courts. Section 9-1107.01 of the D.C. Code states that "[t]he United States District Courts shall have original jurisdiction . . . of all actions brought by or against [WMATA]." D.C. Code § 9-1107.01(81); *see also Barksdale v. Washington Metro. Area Transit Auth.*, 512 F.3d 712, 714 (D.C. Cir. 2008) (quoting D.C. Code).

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) requires a complaint to be sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Although a complaint does not need to include detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The facts alleged "must be enough to raise a right to relief above the speculative level." *Id*. A complaint must contain sufficient factual matter to state a claim for relief that is "plausible on its face." *Id.* at 570. When a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, then the claim has facial plausibility. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. But a court need not accept as true legal conclusions set forth in a complaint. *Iqbal*, 556 U.S. at 678.

In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007). Generally, when a court relies upon matters outside the pleadings, a motion to dismiss must be treated as one for summary judgment and disposed of pursuant to Rule 56. *See* Fed. R. Civ. P. 12(d). "However, where a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment." *Nat'l Shopmen Pension Fund v. Disa*, 583 F. Supp. 2d 95, 99 (D.D.C. 2008).

# III. ANALYSIS

Local 689 argues that the Complaint fails to state a cause of action because its issue is mooted by the arbitration which was scheduled to occur on August 6, 2018. WMATA responds that its Complaint sought more than a temporary restraining order and preliminary injunction to avoid the August arbitration hearing; it also sought a permanent injunction and declaratory judgment to prevent the Union from repeated and continued attempts to arbitrate the same types of grievances.

"The mootness doctrine . . . limits federal courts to deciding actual, ongoing controversies." *Clarke v. United States*, 915 F.2d 699, 700-01 (D.C. Cir. 1990) (en banc) (internal quotation marks omitted). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). A case also becomes moot "[e]ven where litigation poses a live controversy when filed . . . if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Clarke*, 915 F.2d at 701 (internal quotation marks omitted).

Local 689 contends that the Court's order that allowed it to proceed to arbitration on effects-bargaining, an issue the Union identified at the hearing, has mooted the entire case because the controversy is no longer ongoing. *See* Mem. at 4. The contention is partially accurate, but critically incomplete. To recall, in 2015, the Court permanently enjoined the 2014 grievances regarding the 2012 Policy; therefore, any claims related to the 2014 grievances are mooted and will be dismissed. Because the Court did not enjoin arbitration on the effects of 2017 Policy on WMATA's current employees and that arbitration was scheduled for August, this issue is presumably moot. Claims related to 2017 Grievance about the effects of the 2017 Policy on current WMATA employees will also be dismissed. However, the Court granted a preliminary injunction

5

to prevent arbitration of the 2016 Grievance and the 2017 Grievance, except as the 2017 Grievance relates to effects, if any, on current employees. WMATA correctly states that a preliminary injunction is not a final decision on the merits. *See* Opp'n at 5 (citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 394-95 (1981)). WMATA's Complaint sought permanent relief from arbitration of the remaining grievances. Therefore, any claims related to the 2016 Grievance and the 2017 Grievance, except as it related to effects on current WMATA employees, remain open. The Court will grant in part and deny in part Local 689's motion to dismiss.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Local 689's motion to dismiss [Dkt. 13]. All claims related to the 2014 Grievances and the 2017 Grievance, as it related to the effects of the 2017 Policy on current WMATA employees, will be dismissed. Claims related to the 2016 Grievance and the 2017 Grievance, except as related to the effects of the 2017 Policy on current WMATA employees, remain open and pending. A memorializing Order accompanies this Memorandum Opinion.

Date: October 26, 2018

ROSEMARY M. COLLYER
United States District Judge